IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PHILIA GLINSEY                                                          PLAINTIFF

v.                                              CIVIL ACTION NO. 3:11cv218-DPJ-FKB

ALLSTATE PROPERTY AND CASUALTY                                          DEFENDANT
INSURANCE COMPANY

ORDER

This bad-faith insurance case is before the Court on the Motion for Summary Judgment [40] of Defendant Allstate Property and Casualty Insurance Company ("Allstate"), filed on September 30, 2011. Following an extended period of discovery, the briefing on the motion was complete on February 8, 2012. The Court, having considered the submissions of the parties and the applicable law, concludes that the motion should be granted in part but otherwise denied.

I.      Facts and Procedural History

This case arises from two theft claims Plaintiff Philia Glinsey made under her Allstate homeowners insurance policy ("the Policy"). Glinsey traveled out of town during the week of September 20–27, 2009. Sometime that week, Glinsey's sister—who lived in Glinsey's Jackson, Mississippi, home with her—phoned Glinsey and notified her that her home had been broken into and a number of items had been stolen. Mot. Summ. J. [40] Ex. B, Glinsey Dep. 107–08. After learning of the break-in at her house, Glinsey called a relative in Louisiana to check on her late father's residence and learned that her father's trailers had been broken into as well. *Id.* at 108.

Glinsey contacted the local police departments in both Mississippi and Louisiana to report the thefts. *See* Pl.'s Resp. [66] Ex. 1, Jackson Police Department Incident Form; Mot.

Summ J. [40] Ex. I, St. Helena Sheriff's Office Offense Report. She also contacted Allstate to file a claim under the Policy for the allegedly stolen property. According to Glinsey, her insurance agent, Mark Rushing, "told [her] just to make a snapshot picture of what is missing" and provide a list of the stolen items to Allstate. Mot. Summ. J. [40] Ex. B, Glinsey Dep. 99. On October 2, 2009, a claims adjuster sent Glinsey a letter asking her to provide certain information to Allstate:

> Please list all of the items that were damaged or stolen on the enclosed Personal Property Inventory Loss Form, and return it to me at your earliest convenience. Make sure that all the items listed on the worksheet have also been reported to the police.
>
> At the same time you send in the completed Personal Property Inventory Loss Form, please also send along any proof of ownership documents that you may have relating to the items listed on the worksheet. Proof of ownership includes receipts, owners' manuals, cancelled checks, instruction books, photographs, bills of sale, warranty cards, etc.

Mot. Summ. J. [40] Ex. F, Letter. Glinsey provided Allstate handwritten lists of the items she claimed were stolen from both properties.[1] Mot. Summ. J. [40] Ex. G, Mississippi Inventory List; *id.* Ex. H, Louisiana Inventory List.

On or about October 30, 2009, Glinsey withdrew her claim with Allstate as to the theft at her Jackson residence. She explained this decision later in her Examination Under Oath ("EUO") related to the still-pending Louisiana claim, testifying that her mother "admitted to

---

[1]Glinsey listed $106,950 worth of property stolen from her Jackson residence and $133,010 worth of property stolen from the trailers in Louisiana. Mot. Summ. J. [40] Ex. G, Mississippi Inventory List; *id.* Ex. H, Louisiana Inventory List. Among the items allegedly stolen from her Jackson residence were twenty Rolex watches, valued at $80,000, and five diamond rings, valued at $20,000. *Id.* Among the items allegedly stolen from the trailers in Louisiana were $20,000 in assorted car parts, a $15,000 china cabinet, and over 100 antique items, valued at $50,000. *Id.*

2

taking the stuff . . . ." Mot. Summ. J. [40] Ex. D, Glinsey EUO 52; *see also* 53 ("[S]he explained why she did it."). Glinsey now claims that it was Allstate—not her mother—who told her that her mother admitted taking the items from her Mississippi home, and that Allstate's adjusters harassed her into withdrawing the Mississippi claim by threatening to incarcerate her mother. *See* Mot. Summ. J. [40] Ex. B, Glinsey Dep. 19–20, 34–37, 49, 52–54. And she further contends that at the time of the EUO, she was in a fragile state, suffering from bio-polar disorder and effects of narcotics, among other conditions. Finally, Glinsey submitted her mother's affidavit denying she stole the property. *See* Pl.'s Resp. [66] Ex. 3, Shell Aff. ¶ 2.

As to the Louisiana claim, on December 22, 2009, Chief Deputy Chester Pritchett of the St. Helena Parish Sheriff's office sent Allstate a letter stating that the "department cannot vouch for the validity of a theft or missing items report filed under the above complaint number" because "[n]one of the minimum standard necessary to file such a complaint were followed." Mot. Summ. J. [40] Ex. E. Further, the letter explained that "[d]amage to a back door was all that was noted." *Id.* Allstate conducted its EUO on March 5, 2010. In advance of the EUO, an attorney for Allstate sent Glinsey another letter seeking documents, asking her to bring the following to the EUO:

> In order to properly and efficiently handle your claim, I request that you bring the following documents with you at the time of the examination:
>
> 1. Copies of your income tax records for the last two (2) years in which you filed before the loss in question;
>
> 2. Copies of all documents, including but not limited to photographs, which support your claim both as to the property damage and any personal contents;

> 3. Copies of any and all bank records and credit card receipts for the twelve (12) months prior to the loss in question; . . . .

Mot. Summ. J. [40] Ex. D, Glinsey EUO at Ex. 1. Glinsey did not bring any documents with her to the EUO and testified that she had "misplaced them." Mot. Summ. J. [40] Ex. D, Glinsey EUO 17. Glinsey further testified that her father kept receipts for all the items she claims were stolen from his property; however, those receipts were also stolen. *Id.* at 17–18. At no time prior to the filing of the lawsuit did Glinsey provide Allstate with any documentary evidence to show that the items she claims were stolen either existed or were owned by her.[2]

On April 23, 2010, Allstate denied Glinsey's claim for the alleged theft in Louisiana, explaining in a letter to Glinsey that:

> [i]t is Allstates [sic] opinion that no theft occurred at that time and the loss was not accidental from your standpoint as required by the policy. It is Allstate's opinion that you made fraudulent and material misrepresentations in presenting your claim to Allstate and violated the following policy provision:
>
> Page 5 of your Allstate Casualty Insurance Deluxe Plus Homeowners Policy, AP1161;
>
> Concealment or Fraud:
>
> "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."
>
> Neither the writing of this letter nor the taking of any other action by Allstate should be construed as a waiver of any other terms,

---

[2]Since the litigation ensued, Glinsey has located a registration card for the lawnmower she claims was stolen from her Jackson residence and a receipt for some pictures allegedly stolen from her Jackson residence, and has provided Affidavit testimony from several relatives that they had personal knowledge that she owned a number of the items on the lists she submitted to Allstate. *See* Pl.'s Resp. [66] Ex. 2, Glinsey Aff; *id.* Ex. 3, Shell Aff.; *id.* Ex. 4, Wyre Aff; Pl.'s Resp. [67] Ex. 5, McKnight Aff.

> conditions, or exclusions, including other applicable defenses to
> this claim, all of which are hereby specifically reserved.

Pl.'s Resp. [69] Ex. 2 at 16.

Glinsey filed this lawsuit on February 24, 2011, alleging that Allstate wrongfully denied her Louisiana claim and wrongfully coerced her into withdrawing her Mississippi claim. She pursues causes of action for breach of contract, tortious breach of contract, intentional and/or negligent infliction of emotional distress, breach of the covenants of good faith and fair dealing, conversion, duress, and bad faith. *See* Compl. [1-3]. Allstate has moved for summary judgment, the matter is fully briefed, the Court has personal and subject matter jurisdiction, and it is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

III. Analysis

   A. Coverage Issues

Glinsey claims her losses were covered under the Personal Property Protection Coverage of the Policy, which covers

> [p]ersonal property owned or used by an insured person anywhere in the world. When personal property is located at a residence other than the residence premises, coverage is limited to 10% of Coverage C—Personal Property Protection.

Mot. Summ. J. [40] Ex. C, Policy at 8. The Policy insures covered property against covered losses:

> We will cover sudden and accidental direct physical loss to the property described in Coverage C—Personal Property Protection, except as limited or excluded in this policy, caused by:
>
> . . . .

6

> 15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

*Id.* at 9.

Allstate raises three primary arguments for finding no coverage as a matter of law: (1) Glinsey failed to provide an inventory of the lost items to the police; (2) she failed to provide requested documentation proving ownership of the property and loss; and (3) she waived the Mississippi claim. Because questions of fact remain, the Court denies the summary judgment motion.

    1.    Reporting Lost Items

Allstate contends that failure to provide an inventory to the authorities in Louisiana and Mississippi bars coverage under the terms of the Policy. Allstate is at least partially correct that the insured had certain duties and that failure to comply with those duties could void coverage. For example, the Policy includes the following "Conditions":

> What You Must Do After A Loss
>
> In the event of a loss to any property that may be covered by this policy, you must:
>
> a) promptly give us or our agent notice. Report any theft to the police as soon as possible. . . .
>
> . . . .
>
> c) separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed, or stolen property, showing the quantity, cost, and actual cash value and the amount of loss claimed.

> d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies.

*Id.* at 14, 15. In addition, the Policy plainly states that "[n]o suit or action may be brought against us unless there has been full compliance with all policy terms." *Id.* at 18. But Allstate takes the argument one step farther, arguing that Glinsey's "policy requires that each allegedly stolen item be reported to the police . . . ." Def.'s Mem. [41] at 4; *see also id.* at 7 (arguing Glinsey was required to provide "list of the allegedly stolen items to the police"), 9 (stating that under the Policy, "the missing items must be reported to the police").

The operative Policy language fails to support Allstate's argument as it merely requires that the insured "[r]eport any theft to the police as soon as possible. . . ." Mot. Summ. J. [40] Ex. C, Policy, at 14. Allstate never explains how this language requires provision of a list of items to the police, and it fails to cite any authority offering that construction of the policy language. Here, Glinsey reported both the Mississippi and Louisiana thefts to local authorities—which is all the Policy appears to require.

2. Failure to Provide Requested Documents

Allstate also contends that because Glinsey failed to provide "proof that she owned any of the items which were allegedly stolen, or if they ever existed in the first place," it had "no contractual obligation to cover her alleged losses" and "has not breached its insurance contract by refusing to pay her claims." Def.'s Mem. [41] at 11–12. Allstate explains that under Mississippi law,[3] Glinsey's failure "to produce documents that were material to the insurer's investigation of

---

[3] Neither party has suggested that the matter should be decided under Louisiana law, so the Court will assume for purposes of this motion only that Mississippi law applies.

[her] claim" precludes her from recovering against Allstate at all. Def.'s Mem. [41] at 11 (citing *Monticello Ins. Co. v. Mooney*, 733 So. 2d 802 (Miss. 1999); *Gregory v. Continental Ins. Co.*, 575 So. 2d 534 (Miss. 1990)).

It is certainly true that some state and federal courts in Mississippi have held that an insured's failure to cooperate or meet her post-loss conditions "renders the policy void." *See, e.g.*, *Archie v. State Farm Fire & Cas. Co.*, 813 F. Supp. 1208, 1212 (S.D. Miss. 1992) ("A consequence of this well-established and well-ingrained policy is that an insured's refusal to submit to an examination under oath in violation of the express provisions of the insurance policy renders the policy void."). But the case Allstate cites—*Mooney*—actually backs away from that position. There, the court concluded that the insureds breached the provisions of their policy by failing to produce financial records material to the insurer's investigation of a fire loss claim. 733 So. 2d at 809. But the court declined to conclude that the breach necessarily voided coverage and remanded the case to the Chancery Court—with no further guidance—"to determine on remand whether to void the policy." *Id.* Thus, after *Mooney*, it is not clear whether failing to meet post-loss conditions necessarily voids coverage. *See* Jackson, *Mississippi Insurance Law and Practice* § 8:6 ("Courts are loathe to enforce a total forfeiture of insurance benefits merely because a proof of loss is not filed, or which, as filed, is insufficiently detailed to prove the extent and the amount of the loss.").

The Mississippi Court of Appeals recently examined *Mooney* in *Mullen v. Mississippi Farm Bureau Casualty Insurance Co.*, — So. 3d —, 2012 WL 181443, at *6 (Miss. Ct. App. Jan. 24, 2012). In that case, the carrier asked the insured to submit to an EUO and provide financial records, but the insured's counsel insisted that the carrier justify its right to the information

9

before he would allow his clients to provide it. Following summary judgment in the carrier's favor, the appellate court acknowledged the line of cases holding that the refusal to comply with such requests voids coverage. *Id*. at *4. But the court reversed summary judgment, explaining that:

> [w]hile the above cases all support Farm Bureau's argument that refusal to submit to an examination under oath or provide requested financial information voids coverage, all of the cases involve a critical fact that is not present in this case—willful refusal to comply with these policy provisions on the part of the insured.

*Id*. at *6. Because the Mississippi Supreme Court left this question open in *Mooney*, this lower state-court decision is accorded "some weight," though it is not binding. *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 295 (5th Cir. 1995).

In the present case, Glinsey contends that she could not produce receipts documenting the Louisiana losses because the records were stolen. And she claims that she cannot produce records regarding the Mississippi losses because they were never kept. She further contends that she provided all her agent requested and that she has now offered all that is available. Some of Glinsey's explanations are convoluted and hard to credit. But that is not the issue under Rule 56. The Court must view the evidence in a light most favorable to the non-movant without making credibility determinations or weighing the evidence. *Reeves*, 530 U.S. at 150. Glinsey has created a question of fact as to whether coverage should be voided.[4]

---

[4]Aside from the alleged failure to comply with post-loss duties, one last point regarding ownership of the property is worth mentioning. The parties dispute whether Glinsey's father gave her the disputed personal property in Louisiana. But even under Allstate's theory—that he did not give her the property and died intestate—by Allstate's own analysis Glinsey would have inherited a 1/6 interest in the disputed lost property. Thus, there is at least a factual issue regarding her ownership interest in the Louisiana property.

3. Waiver of Mississippi Claim

As to Glinsey's claim relating to the alleged theft at her Jackson residence, Allstate appears to argue that it never denied coverage because Glinsey voluntarily withdrew her claim. *See* Mot. Summ. J. [40] ¶2; Def.'s Mem. [41] at 9 ("[T]he Mississippi claim was withdrawn . . . ."). Allstate notes that Glinsey admitted in her EUO that she withdrew the claim because her mother, not some unknown thief, took the items from her home. Def.'s Mem. [41] at 7 (citing Mot. Summ. J. [40] Ex. D, Glinsey EUO 50, 52–53). But Glinsey now says that Allstate's adjusters coerced her into making that statement in the EUO and in withdrawing her claim.

Under Mississippi law, the question whether a release was entered into voluntarily is ordinarily a question of fact for a jury. *Smith v. Sneed*, 638 So. 2d 1252, 1261 (Miss. 1994) (collecting cases). Given the fact issues involved in ascertaining whether Glinsey voluntarily withdrew her claim, the Court concludes that the disputed withdrawal does not foreclose Glinsey's ability to proceed against Allstate on her Mississippi coverage claim. *Cf. Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 274 (5th Cir. 2008) ("At some point, an insurance company's conduct may reveal such a refractory attitude . . . that a denial might arise from what superficially appears to be negotiation."). Allstate obviously denies that it harassed Glinsey into dropping the claim and giving the EUO testimony, but again the Court must view the facts in a light most favorable to the non-moving party. As such, Allstate has not established that it is entitled to judgment as a matter of law based on waiver.

B.   State-Law Torts

Allstate also seeks summary judgment of Glinsey's claims for intentional and/or negligent infliction of emotional distress (Count Three), conversion (Count Five), and duress and/or undue influence (Count Six).  The Court will address each claim in turn.

1.   Intentional and/or Negligent Infliction of Emotional Distress

Glinsey alleges that Allstate committed intentional and/or negligent infliction of emotional distress by denying her Louisiana claim, coercing her to withdraw her Mississippi claim, and generally harassing her while her claims were pending.  Compl. ¶ 14.  Allstate argues that (1) its denial of her Louisiana claim was proper; (2) her credibility on the issue of whether she was coerced into withdrawing her claim "is extremely lacking"; and (3) a specific allegation Glinsey has made regarding the actions of a court reporter blocking her in her driveway is not attributable to Allstate and cannot render it liable for infliction of emotional distress.

Starting with the latter, there is no evidence that Allstate is responsible for the acts of the court reporter, and that portion of the motion is granted.  Regarding the denial of the Louisiana claim, Allstate relies exclusively on the propriety of its declination.  *See* Def.'s Mem. [41] at 14.  But since that issue has survived summary judgment—and Allstate offered no alternative argument for dismissing the infliction of emotional distress claims—the infliction of emotional distress claims survive as well.  Regarding the coercion component of the claim, Allstate contends that the only evidence of wrongful threats or involuntary acts by Glinsey comes from Glinsey's deposition testimony which is contradicted by her EUO and otherwise "extremely lacking in credibility."  Def.'s Mem. [41] at 15.  Glinsey suffers from obvious credibility concerns, but as stated, this Court does not weigh credibility under Rule 56.  According to

Glinsey, her waiver and EUO testimony were due to confusion, mental issues, and Allstate's threat to incarcerate Glinsey's mother if she did not waive the claim. Viewed in a light most favorable to Glinsey, questions of fact exist on this portion of the claim.[5]

    2.    Conversion

Glinsey alleges that Allstate committed the tort of conversion by virtue of accepting her premiums for the year during which the thefts allegedly occurred while wrongfully failing to pay her claims. "To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998). Allstate argues that its receipt of Glinsey's premiums was not wrongful, particularly given that its denial of her Louisiana claim was proper. Def.'s Mem. [41] at 16. As stated, the Court found questions of fact as to both the Mississippi and Louisiana claims. And while the Court questions the propriety of the conversion claim in general, Allstate has offered no other arguments and no legal authority addressing conversion in this context. Because other issues have survived, this claim will be carried over to trial. The parties are instructed to develop authority for their positions so that the jury may be properly instructed.

    3.    Duress and/or Undue Influence

Allstate asserts that it is entitled to summary judgment as to Glinsey's duress claim because her "credibility in this issue is extremely lacking." Def.'s Mem. [41] at 15. As the Court has already concluded, however, Glinsey's credibility as to whether she was coerced into

---

[5]Although other essential elements exist, they were not challenged under Rule 56.

withdrawing her Mississippi claim is not for the Court to assess at this stage of the case. That said, it is not clear the claim should survive as a separate tort rather than as a basis for voiding the alleged waiver. As with the conversion claim, the parties are instructed to develop their authority before the charge conference.

    C.    Punitive Damages

The Fifth Circuit Court of Appeals summarized the test for determining whether bad faith should be presented to the jury under Mississippi substantive law:

> "In insurance contract cases, the trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issues of punitive damages." *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 185 (Miss. 1994) (internal quotations omitted). If, upon reviewing all the evidence, the district court concludes that the insurer acted in bad faith, or that reasonable minds could differ regarding whether the insurer acted in bad faith, then the district court should send the issue of punitive damages to the jury. *Id.* at 185–86. . . .
>
> Under Mississippi law, insurers have a duty "to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation" and may be liable for punitive damages for denying a claim in bad faith. *Liberty Mut. Ins. C. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003); *U.S. Fid. & Guar. Co. v. Whittington*, 964 F.2d 487, 492 (5th Cir. 1992). [Insureds] bear the burden of proving that [the insurer] acted in bad faith when it denied their insurance claim. *Wigginton*, 964 F.2d at 492.
>
> Section 11-1-65(1)(a) of the Mississippi Code Annotated states that "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Mississippi law does not permit parties to recover punitive damages unless they first prove that they are entitled to compensatory damages. Miss. Code Ann. § 11-1-65(1)(b)-(c);

> *Sobley* [*v. S. Natural Gas Co.*], 302 F.3d [325] at 330 [(5th Cir. 2002)].
>
> To recover punitive damages for bad faith denial of their insurance claim, the [insured] "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Wigginton*, 964 F.2d at 492. [The insurer,] on the other hand, "need only show that it had reasonable justifications, either in fact or in law, to deny payment." The question of whether [the insurer] had an arguable basis for denying the . . . claim "is an issue of law for the court." *Id.*

*Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627–28 (5th Cir. 2008).

In *Dunn v. State Farm Fire & Casualty Co.*, the Fifth Circuit held that the insurer "does not need to prove that it was a certainty that [the insured] was not entitled to payment. Instead it must show only that it had reasonable justifications, in either fact or law, to deny payment." 927 F.2d 869, 873 (5th Cir. 1991). An arguable basis is "one in support of which there is some credible evidence." *Brien v. Equitable Assur. Soc. of the United States*, 211 F.3d 593 (Table), 2000 WL 329186, at *1 (5th Cir. Mar. 17, 2000) (citing *Guy v. Commonwealth Life Ins. Co.*, 894 F.2d 1407, 1411 (5th Cir. 1990)).

As an initial point, the Court finds that the issue of punitive damages should be carried to trial with respect to the Mississippi claim. If, as Glinsey swore, Allstate's agents threatened to throw her mother in jail if Glinsey persisted in the claim despite the fact that her mother did not take the disputed property, then a jury could find punitive damages. That said, Plaintiff caries a heavy burden of proof on this issue. Following the presentation of evidence at trial, the Court will have the opportunity to re-evaluate the propriety of extra-contractual and punitive damages related to the Mississippi claim.

Turning to the denial of coverage in Louisiana, Allstate argues that it is entitled to summary judgment on Glinsey's bad faith claim because it had a reasonable, arguable basis for not paying Glinsey's theft claims: Glinsey did not provide it with any evidence that "proved that she actually owned any of the items which she alleged were stolen." Def.'s Mem. [41] at 12.

While the Court ultimately disagreed with Allstate's position that under Mississippi law, Glinsey's failure "to produce documents that were material to the insurer's investigation of [her] claim" precludes her from recovering against Allstate at all, Allstate had an arguable basis for its interpretation and for denying the Louisiana claim. As noted above, an open question exists as to whether failure to produce documents voids coverage. *See Mooney*, 733 So. 2d at 809 (expressing court's uncertainty on whether insured's breach requires voiding coverage and remanding to trial court to decide the issue). An "insurer [is] entitled to have a court resolve the undecided question of law to determine its liability without being punished for referring the question to a court." *Dunn*, 927 F.2d at 874. Allstate had an arguable basis to deny the claim.[6]

IV. Conclusion

For the foregoing reasons, Allstate's Motion for Summary Judgment [40] is granted as to Glinsey's emotional distress claim relating to the incident with the court reporter, as well as her

---

[6]Allstate has argued only that Glinsey's bad faith claim fails because it had an arguable basis for failing to pay. In response to Allstate's motion for summary judgment, Glinsey notes that "the issue of punitive damages may be submitted to a jury under certain circumstances even where an arguable basis exists." Pl.'s Mem. [70] at 24 (quoting *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 202 (Miss. 2002)); *see Stewart*, 846 So. 2d at 201 ("[T]he issue of punitive damages may be submitted, notwithstanding the presence of an arguable basis, where there is a question that the mishandling of a claim or the breach of an implied covenant of good faith and fair dealing may have reached the level of an independent tort."). It is not entirely clear that Allstate directly addressed this issue in reply. But because punitive damages would be bifurcated anyway, the Court may revisit the issue if necessary following the liability verdict.

punitive damage claim arising out of the denial of her Louisiana claim. Those claims are hereby dismissed with prejudice. The motion is otherwise denied.

**SO ORDERED AND ADJUDGED** this the 27th day of April, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE